FRANK R. JOHNSTON *v.* STATE.

[58 South. 97.]

1. CRIMINAL LAW. *Evidence. Self-serving declaration. Examination of witnesses.*

Where a defendant on trial for the larceny of a steer claimed that he was employed by his brother to drive two steers to market and that he knew nothing about their ownership, except what his brother told him, and that he did not make the sale nor share in the proceeds, but was only paid for driving the cattle, it was reversible error for the court to exclude the testimony of witnesses that accused had stated this to them while driving the cattle to market and such declarations were not self-serving, but explana-tory of defendant's possession.

2. CROSS EXAMINATION OF WITNESSES. *Improper questions.*

It was improper for the district attorney to ask a party charged with crime, if he was not known as "Hangman Johnston" and if he had not hanged forty-three men.

APPEAL from the circuit court of Harrison county.

HON. GEORGE S. DODDS, Special Judge.

Frank R. Johnston was convicted of grand larceny, and appeals.

Appellant was convicted of grand larceny, being charged with stealing a steer valued at thirty-five dol-

lars. According to his testimony, his brother, Arthur Johnston, was the owner of certain cattle, which were out on the open pasture, and said Arthur Johnston took appellant with him and pointed out two steers, and employed appellant to drive them to town to a butcher. A few days later appellant went out and drove the two steers, pointed out to him by his brother Arthur, to the city of Bay St. Louis, to a butcher. He contends that he never claimed the cattle, knew nothing about the ownership, except what his brother told him, that he did not make the sale, and had no interest in it, except that his brother paid him for driving them up. It seems that one of the steers belonged to a man named Mc-Queen, and appellant and his brother were afterwards indicted for grand larceny. They obtained a severance and were tried separately by the circuit court of Harrison county on change of venue. Appellant was convicted, and, on appeal, assigns among other errors, the action of the court in excluding a conversation had between himself and witness Quintini, with reference to the steers; the questions propounded being as follows: "Q. Do you remember having a conversation with Mr. Johnston with reference to those steers? If so, what was it? (Objected to, sustained, and defendant excepts.) Q. In this conversation which you had with him, did or did not the defendant, Frank Johnston, state to you that the steers which he was driving, one of which was a pale red steer, did not belong to him, that he had nothing to do with him, that he was only driving them for his brother, and that if you wanted to purchase them, or make any trade with reference to them, you would have to see his brother? (Objected to, sustained, and defendant objects.)" Another witness, Asher, was introduced by defendant, and was not permitted to testify to a similar conversation had with defendant.

*W. H. Maybin,* for appellant.

The court will note that throughout the entire transaction there is not a suggestion in the evidence that the appellant was a party to any of the happenings, however remote, in connection with the steer, except that he was hired to drive it and did drive it; that he had nothing to do with the sale to Dennis, the butcher, that he received none of the proceeds of the sale; that he was not present at the sale; and knew absolutely nothing about the transaction, except as the hired driver for Arthur Johnson. No state witness testified to any fact that would suggest a conspiracy between Arthur and Frank Johnston to steal the steer. The state witness on the other hand testified that the appellant had absolutely no connection with the transaction other than heretofore stated. This was the state's whole case.

On cross-examination, the district attorney perhaps over-zealous to secure the conviction of the appellant committed an error sufficient to reverse the case. Under the statute it is competent to examine a witness touching his conviction, but when he has answered the questions categorically, that is an end to the matter and it is erroneous to permit the district attorney to go into detail. In this case over the objection of the appellant, the district attorney was permitted not only to ask the appellant if he had ever been convicted of violating the law, but the district attorney was permitted to go into details extending over a number of years. This was error, it is respectfully submitted, and then the district attorney asked the appellant if he was not known as "Hangman Johnson" and if he had not hanged forty-three men. It is true that an objection to these two questions was sustained and the jury instructed to disregard these questions. But the evil had been done and after the impression had been created that the appellant was an exceedingly bad man.

*Frank Johnston,* assistant attorney-general, for appellee.

The testimony offered in regard to the alleged conversation between Quintini, the witness, and Arthur Johnston, was clearly incompetent from every point of view. Arthur Johnston was not on trial in this cause, and if he had been, his conversation, or alleged conversation, with Quintini, in regard to this alleged crime was wholly incompetent to be introduced by the appellant. I submit the same objection to the court in regard to the rejected testimony of Joe Favre, a witness.

As to the other objections arising on the cross-examination of the defendant by the district attorney, I submit that the action of the trial judge in permitting this line of cross-examination was perfectly correct. This defendant was a witness against the state in his own behalf, and certainly within the limits of cross-examination; the state had a right to cross-examine him in regard to his former convictions, all of which matters were pertinent to the question, and especially to the question as to the value of his testimony before the jury. On these lines the widest latitude is always allowed by the trial judge in the cross-examination of witnesses.

The objection doesn't reach the point that he could have asked him if he had been convicted of cattle stealing on former occasions, but a very different question, namely, whether he could not be cross-examined in regard to the circumstances attending these transactions. If the one was admissible, the other was clearly competent, and the entire cross-examination along this line was for the purpose of ascertaining from the witness, by cross-examination, all the information necessary for the jury to enable them to arrive at a fair estimation of the value and probative force of this testimony.

WHITFIELD, C., delivered the opinion of the court.

The court below erred in excluding the testimony of Emile Asher and Frank Quintini as to the conversations, between the appellant and them, respectively, touching the steer whilst being driven into the market. These declarations were made at a time when there was no reason to suppose that they were being manufactured for the purpose of exculpation. They were not self-serving declarations, within the true meaning of that principle of the law. They were explanatory of the custody or possession then had by the appellant whilst driving the steers into market. See Wharton's Criminal Evidence (10th Ed.), vol. 2, sections 691, 692, and *Penn* v. *State,* 62 Miss., at the bottom of page 474. This testimony was vital to the defendant's case, and under the circumstances under which it was given is entirely free from any suggestion that it was manufactured, in view of any trial to be had, and is entirely competent under the authorities cited.

It was improper, on the examination of the defendant, to ask him if he was known as "Hangman" Johnston, and if he had not hanged forty-three men; but the learned court below promptly sustained an objection to these two questions and excluded them from the jury.

PER CURIAM. The above opinion is adopted as the opinion of the court, and, for the reasons therein indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*