# W. L. SLAYDON v. STATE.

### [58 South. 977.]

1. CRIMINAL LAW. *Larceny. Evidence. Contradiction of accused. Admissibility. Self-serving declaration. Evidence of other offenses.*

Where on the trial of a criminal case the evidence offered by the state does not tend to demonstrate defendant's guilt of the crime charged against him, but simply tends to impeach a witness upon an immaterial matter, it should not be admitted to the jury.

2. LARCENY. *Evidence. Self-serving declaration.*

Where a party on trial for the larceny of a steer offered evidence that he had searched the county for the steer for several months before the alleged larceny, and that he made inquiries of numbers of people during this time about the steer giving the description, color and marks of the animal and describing him as an ox he had bought from a certain person, such evidence should have been admitted as they were not self-serving acts or declarations.

3. CRIMINAL LAW. *Evidence of other offenses. Admissibility.*

It was error to allow the district attorney to ask, on cross-examination, a defendant on trial for stealing a steer if he had not been indicted for stealing another steer belonging to another person.

APPEAL from the circuit court of Pearl River county. HON. A. E. WEATHERSBY, Judge.

W. L. Slaydon was convicted of larceny and appeals. The facts are sufficiently stated in the opinion of the court.

*Bilbo & Smith* and *Easterling, Potter & Greaves*, for appellant.

The law as laid down not only in this state but in other states and by Prof. Wigmore, Wharton and Un-

derhill in their valuable treatise on this subject, that it is admissible to show the acts, demeanor and inquiries and declarations made by a party at the time and before acquisition and disposition of property acquired by him in cases of this kind; that this kind of evidence is admissible for the reason that it is a part of the *res gestae,* it emphasizes and characterizes the nature and character of the possession and holding of the property in question. It shows what the intention of the party in dealing with the property was and in these kind of cases it is most necessary to the defense of the party charged with crime as in the instant case.

We submit that it was competent for appellant to show that after he purchased the ox in question from Goss that he made search and inquiry as a person would do in looking for their own stock; that he inquired of the neighbors as to the whereabouts and the description of any ox they had seen as corresponding to the description of the ox he was looking for. Statements made by appellant stating the nature of his possession and characterizing the nature of his possession and holding of said ox, his demeanor and manner of searching for the ox, his open and visible method of proceeding, statements that he made as to where he got the ox, how he got it, statements that he made as to the buyer and any other act, declaration or inquiry during all this time, were not only admissible but were of the most vital and material interest to appellant's defense. To cut off this kind of evidence in a case like the one before the court is to cut off all proof that the man could make of his innocence and convict him on circumstances without allowing him a word of explanation.

We have not far to seek for authority on this proposition. In the recent case of *Johnson* v. *State,* decided at the April term of this court, being reported in 58 So., at page 97 a case practically in point. This court in dealing with this question says:

"The court below erred in excluding the testimony of Emile Ascher and Frank Quintine as to the conversation between the appellants and them, respectively, touching the steer whilst being driven into the market. These declarations were made at the time there was no reason to suppose that they were being manufactured for the purpose of exculpation. They were not self-serving declarations, within the true meaning of the principle of the law. They were explanatory of the custody or possession then had by the appellant whilst driving the steers into market. See 2 Wharton's Criminal Evidence (10 Ed.), sec. 691, 692, and *Penn* v. *State,* 62 Miss. 474. This testimony was vital to the defendant's case, and under the circumstances which it was given is entirely free from any suggestion that it was manufactured in view of any trial to be had, and is entirely competent under the authorities cited."

Mr. Underhill in his valuable work on Criminal Evidence, latter part of section 100 on declarations, uttered prior to crime, says: "The declarations, if of the *res gestae,* may be offered by the accused in his own behalf to illustrate or to show his motives, or to rebut an inference of criminal intention (authorities cited in footnotes), and before any part of the declaration is offered against him, if the action to be explained is clearly relevant, and is already in evidence."

The court will observe in the report of the case of *Johnson* v. *State,* 58 So. 97, that there is collected in the headnotes references to the Century Digest wherein can be found the authorities collected on this proposition.

We will now call the court's attention to the assignment, No. 13. We desire to say that more than one-half of all the questions propounded to appellant and the great score of witnesses introduced by the state to contradict and impeach appellant on a single point; that is, that appellant had stated to certain parties that he had

called Mr. Goss up and talked with him over the long
distance telephone. What the object of the state was in
all of this we are at a loss to say. Under the rules of
this court as laid down in the *Williams case,* 72 Miss.
117, 19 So. 826, and other cases, the rule is laid down
and the test given in no uncertain manner wherein and in
what way a witness may be impeached. It is laid down
there that a witness cannot be impeached upon a col-
lateral and immaterial matter. This is the law of this
state and has been and we hope will always be the law.
In the *Williams case, supra,* Judge WHITFIELD *inter alia*
says:

"The exact test here is what was the fact embodied
in her unsworn statement. That she had sent Elsie
Ross word that there was a plot, etc.—was this fact her
mere statement to Elsie Ross that there was a plot, etc.,
a substantive fact, relevant to the guilt or innocence of
this defendant, which the state could have proved as a
part of its case in chief? Most certainly not. It is, in
effect, but hearsay, and should not have been allowed to
be contradicted. Whether she made such statement or
not is a matter clearly irrelevant and collateral within
the test we have laid down."

Last but not least we desire to call attention to the very
signal and fatal error committed by the court below in the
trial of this case, and the most damaging of all the nu-
merous errors we have pointed out, in our judgment.
We invite the careful consideration of the court to pages
95 and 96 of the record on this point. The ditrict attor-
ney, with the manifest intent and purpose of prejudicing
appellant in the eyes of the jury, deliberately interro-
gated appellant as witness in his own behalf as follows:

"Q. That was one of those same oxen you sold Mr.
Odom?" Objection by defendant. Overruled. Excep-
tion.

"Q. One of those same oxen you sold Mr. Odom at
the same time which you claim now to have gotten from

Mr. Goss—you were indicted for stealing that same ox, weren't you? A. No, sir.''

And again: ''Q. Now, you say that was not Batson-McGehee Company's ox?'' Bilbo objects. Overruled. Bilbo excepts.

''Q. Now, Mr. Slaydon, didn't you go to Mr. Batson and tell him that you were willing to make everything all right, and din't you pay him for that ox to keep from being indicted?'' Objection. Overruled. Exception. A. Give me the question.''

''Q. Didn't you go to Mr. L. B. Batson of the firm of Batson-McGehee Company at Millard and pay him for this same on which you claim?'' Objection. Overruled. Exception. ''A. Yes, sir, I paid him for it.''

''Q. And it was Mr. Batson's ox? A. No, sir, I don't know that it was''— and so on.

We think that a mere statement of this method of examination permitted and sanctioned by the trial judge, in the presence of the jury trying appellant for his liberty, carries conviction with it. We take it that the law on this point is so clear and elementary that no argument is necessary to show that this evidence was prejudicial and incompetent. That this is the most damaging, prejudicial and fatal error that could be committed, we think will go without contradiction; to try a man for one crime and allow the state to show that the man is charged with other crimes, or has committed other crimes, is certainly the unfairest practice that we have ever seen. That it is reversible error we think there can be no doubt. In fact we have authority and abundance of authority that say that this cannot be done. It has been condemned from the day of the Magna Charta. On this point our whole law differs from the civil law. This principle is looked upon as one of the most humane and the highest and most sacred protective principles of the common law.

Our court has declared itself on this proposition, and in language that admits of no misinterpretation. We re-

fer the court to the case of *Starling* v. *State,* 42 So. 798, wherein this court speaking through CALHOUN, Judge, says: ·

"James Starling and Charlie Starling were jointly indicted and jointly tried. ·James was put on the stand as witness for the defense, that is for both. It was manifest error to permit him to be asked whether he was "ever charged in any county of committing any offense before." This question was objected to, the objection overruled and exceptions taken; and it elicited an affirmative answer, and that he ·had been twice charged—once with fighting and once with unlawfully selling liquor, but had not been convicted. 2 Wigmore Ev., sec. 982, cl. 3, p. 410. The statute under which this trial was had (Ann. Code, 1892, Sec. 1746, same as Code 1906, Sec. 1923) narrows the rule of exclusion only to the extent of allowing examination as to conviction. As an appellate court we cannot say what effect this had upon the jury by this incompetent testimony, elicited from an exculpatory witness. Reversed and remanded.

On the same line is: *Magee* v. *State,* 22 So. 890; *Dabney* v. *State,* 82 Miss. 252, 33 So. 973; *Collins* v. *State,* 54 So. 666; *Kearney* v. *State,* 68 Miss. 233; *Morris* v. *State,* 8 S. & M. 762; *Whitlock* v. *State,* 6 So. 237; *King* v. *State,* 66 Miss. 502; *Naul* v. *State,* 12 So. 902; *Herman* v. *State,* 75 Miss. 340; *Johnson* v. *State,* 58 So. 97; 1 Wharton's Criminal Ev., sec. 29, 29a, 30, and authorities cited.

We desire to quote especially the language of the learned court in the case of *People* v. *Wells Ice Co.,* 34 Pac. 1078, in regard to the action of the district attorney in the case at bar. The court said: "It would be an impeachment of the legal learning of the counsel for the people to intimate that he did not know the question to be improper and wholly unjustifiable. Its only purpose was to get before the jury a statement in the guise of a question that would prejudice them against the ap-

pellant.  If counsel had no reason to believe the truth of the matter insinuated by the question, then the artifice was most flagrant; but if he had any reason to believe in its truth still, he knew that it was a matter that the jury had no right to consider.  When the clear purpose is to prejudice the jury against the defendant in a vital matter by the mere asking of the question, then a judgment against the defendant will be reversed, although objections to the question were sustained, unless it appears that the questions could not have influenced the verdict."

*Claude Clayton,* assistant attorney-general, for appellee.

Counsel for appellant assigns as error the ruling of the trial court in not permitting appellant's witnesses to detail conversations had with them by appellant while in search of the ox presumably purchased from Goss.  I will not attempt to cite instances in which this ruling of the court was brought forth, as they are elaborately embodied in the brief of counsel for appellant.

First, I call attention to the case of *Williams* v. *State,* 79 Miss. 555.

"Previous declarations of a witness in conformity with his testimony before the court cannot be given in evidence at all affirmatively."

Underhill on Criminal Evidence (2 Ed.) 182, sec. 99, is in part as follows: "Declarations which are commonly called self-serving cannot be given in evidence in favor of the accused unless they are part of the *res gestae.*"

*Ibid,* section 100.  "If the declaration meets the requirement of the rule now under consideration, that is, if it explains or illustrates a relevant fact, if it is not incompetent, merely because its utterance precedes the commission of the crime."

This court had held in the case of *Newcomb* v. *State,* 38 Miss. 383, that, "in order to render declarations com-

petent evidence in favor of declarant, on the ground that they are a part of the *res gestae*, it is essential that they should have been made contemporaneously with the main fact which they are offered to illustrate, and whilst the transaction they are supposed to explain was being carried on between the parties to it."

Appellant cited the recent decision of this court in the case of *Johnston* v. *State,* 58 So. 97 in support of their contention. However, this case is very easily distinguished from the case at bar by the following varying circumstances:

In the *Johnston case, supra,* appellant's brother pointed out the ox in question, stated his ownership of said ox, gave him instructions as to its disposition, and appellant believing, as was natural and proper for him so to do, that his brother owned the cattle, drove them to market.

In the case at bar we are confronted with a wholly different state of facts. Here appellant claims to have bought an ox, vaguely and indefinitely described, from one Goss, who, from the testimony, contained in this record, might be presumed to be a wholly fictitious person, who tells appellant about where the ox in question ranged. Appellant goes in search of the ox, and takes particular pains to tell everyone with whom he comes in contact while in search of the ox, that he has purchased the ox in question, thus manufacturing abundant evidence in his own behalf.

Counsel for appellant assigned as error the introduction of testimony rebutting the evidence of appellant with reference to a certain alleged telephone conversation with one Mr. Goss; that the predicate was not laid for this testimony, and that it was the impeachment of a witness on a wholly collateral and immaterial matter.

I respectfully submit to this honorable court that counsel is laboring under a misconception of the law and facts in reference to this matter.

Appellant testified that he had had such a telephone conversation with one Goss; that Goss had told him to submit this matter to arbitration, etc., all of this it will be observed, after Hugo Smith, the young boy whose ox was stolen, had surprised appellant by the acceptance of his offer to accompany appellant to Slidell, La., and there settle the question of the ownership of the ox in controversy. This rebuttal evidence certainly tends to establish appellant's uneasiness, and that his guilty conscience was leading him into paths of unforeseen danger. Can it be seriously contended that the state cannot show by competent witnesses that no such phone message was ever received by appellant, these witnesses being clerks, uninterested in the trial of the case, in a store having a phone over which the only message that could have been received by appellant would have been recorded, and who also kept a record of every phone message received or sent?

The case cited by counsel on this question is not in point, and a reading of the argument in the brief of counsel will disclose the correctness of my view.

With reference to the last assignment of error, an assignment upon which counsel relies particularly for reversal, I shall simply and briefly state the facts as presented by the record, and leave the case to the consideration of this honorable court without further remarks.

Appellant, interrogated by the district attorney, admitted that he had on one occasion prior to this paid the Batson-McGehee Company for an ox, which he had stolen from the said company, to protect himself from being indicted for stealing. The district attorney asked appellant if this was true, and appellant, over objection of counsel, answered in the affirmative. In this case, he admits paying Hugo Smith for Hugo's ox, assuredly with the same purpose in mind. Counsel, in their brief, endeavor to leave the impression that appellant had been

indicted for stealing the Batson-McGehee Company's ox.

Taking this record as a whole, there is no question but that the guilt of appellant was shown without any mitigating circumstances. A clear case of grand larceny was made out, admissible evidence was admitted to the jury, and appellant was found guilty as charged.

Argued orally by *Theo. G. Bilbo* and *Clayton D. Potter,* for appellant.

Cook, J., delivered the opinion of the court.

Appellant was tried, convicted, and sentenced to a term of five years in the penitentiary, under an indictment charging him with the larceny of a steer belonging to one Hugo Smith.

The steer alleged to have been stolen was sold to a cattle dealer by appellant, and by the dealer shipped out of the state. No witness who claimed to have known Hugo Smith's steer ever saw the steer while it is alleged it was in the possession of appellant, or after it was delivered to the cattle dealer. The state endeavored to identify the steer sold by appellant as Hugo Smith's missing steer, by the descriptions of the steer given by the buyer to the jury. Smith's steer was variously described by the witness, claiming to have enjoyed a personal acquaintance with the animal; but the state insists that there was no real variance in the testimony of the state's witnesses, and that the steer sold by appellant was undoubtedly the property of Mr. Smith, and this is conceded for the purposes of this review.

Appellant claimed that he bought the steer from one Goss a resident of Slidell, La., together with several other steers, and when Smith claimed the steer sold by him to Odom, the cattle dealer, appellant told him how he came into the possession of the steer. Appellant endeavored to persuade Smith to go to Louisiana to see Goss about the steer, and offered to pay his way; but

when Smith accepted his proposition, and agreed to go and see Goss, appellant informed him that he had just talked with Goss over the phone about the matter, and Goss advised him to submit the matter to arbitration. The state, in the course of the trial, offered evidence to prove that appellant did not have any such conversation with Goss over the phone, and this evidence went to the jury, over defendant's objections.

The state made all of this proof about appellant's proposition to pay Smith's expenses to Slidell, for the purpose of contradicting him on his alleged conversation over the telephone. There was certainly nothing tending to demonstrate defendant's guilt of the crime charged against him contained in his proposition to pay Smith's expenses to Slidell, and there could be no significance in his withdrawal of the proposition. If he gave a false reason for doing a thing which was not in itself incriminating, or which could not be affirmatively proven as evidential on the main issue, then this impeachment of the witness was upon an entirely immaterial matter, which tends to switch the minds of the jury from the main line to side tracks leading nowhere.

It seems that appellant had searched the country for the steer for several months before the alleged larceny, and that he made inquiries of numbers of people during this time about the steer, giving them a description of the color and marks of the animal, and describing him as an ox he had bought from Goss. He offered to prove these facts as circumstances tending to establish his good faith, and tending to overthrow the imputation of stealing, even though the steer sold by him was the property of Hugo Smith. All of this evidence was rejected by the court, at the instance of the state, for the reason that these acts and statements were self-serving acts and statements, and not a part of the res gestae.

There is much authority in support of the correctness of the ruling of the trial court, but we think this court

has recently announced a different and more rational rule in the case of *Johnston* v. *State,* 58 South. 97. The doctrine applied by this court in the case cited is in line with the views of Mr. Wigmore in his great work upon the Law of Evidence. Speaking of the rule which excludes the acts and statements of the accused upon the ground that a party must not be allowed to ''make evidence for himself,'' he says: ''The notion of 'making' —that is, 'manufacturing'—evidence assumes that the statements are false, which is to beg the whole question. Then it is further suggested that at any rate the accused, if guilty, may have falsely uttered these sentiments, in order to furnish in advance evidence to exonerate him from a contemplated crime. But here the singular fallacy is committed of taking the possible trickery of guilty persons as a ground for excluding evidence in favor of a person not yet proven guilty; in other words, the fundamental idea of the presumption of innocence is repudiated.'' Wigmore on Evidence, vol. 3, sec. 1732.

In the instant case, to exclude the evidence offered was to assume, first, the guilt of the accused; and, second, that he did and said these things in order to furnish an exoneration of himself of the crime then contemplated. It is hardly conceivable that defendant had planned the stealing of the steer for months before he actually stole him, and in preparation of a defense he roamed over the country searching for the steer and ''making evidence for himself.'' The enforcement of such a rule is to deny the defendant the benefit of the presumption of innocence.

Among other things, the district attorney asked the defendant, when he was testifying as a witness, if he was not indicted for stealing another and different steer, belonging to another person than Hugo Smith. This was all objected to, but the objection was overruled. It is not necessary to cite authorities to show that this was error.

*Reversed and remanded.*